UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
SANTANDER CONSUMER USA, INC.,

                    Plaintiff,

       v.

PORT AUTHORITY OF NEW YORK AND NEW
JERSEY,

                 Defendant.

-------------------------------------------------------------
 VW CREDIT, INC.,

                    Plaintiff,

       v.

 PORT AUTHORITY OF NEW YORK AND NEW
JERSEY,

                 Defendant.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-1997 (MKB)

20-CV-1998 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Santander Consumer USA, Inc. ("Santander") and VW Credit, Inc. ("VW

Credit") commenced related actions on May 4, 2020 against Defendant Port Authority of New

York and New Jersey (the "Port Authority") pursuant to 42 U.S.C. §§ 1983 and 1988, alleging

unreasonable seizure and deprivation of property without due process in violation of the Fourth

and Fourteenth Amendments and the New York State Constitution.[1]  (Santander Compl.; VW

---

[1]  Plaintiffs commenced separate actions on May 4, 2020 asserting the same claims.  (*See*
Santander Compl., *Santander Consumer USA, Inc. v. Port Auth. of N.Y. and N.J.*, No.

Credit Compl.)  Specifically, Plaintiffs allege that Defendant deprived them of their right to a

2015 Nissan Altima, 2014 Kia Sorrento, 2019 Chevrolet Impala, and 2016 Audi A7 (collectively

the "Vehicles"), without due process, by impounding the Vehicles after they remained too long

in airport parking lots without payment.  (Santander Compl. ¶¶ 8–10, 23, 29, 35, 44–57; VW

Credit Compl. ¶¶ 8, 21, 30–43.)  Plaintiffs seek damages and injunctive relief.  (Santander

Compl. ¶¶ 58–66; VW Credit Compl. ¶¶ 44–52.)

     Plaintiffs move for summary judgment,[2] and Defendant opposes the motions.[3]  For the

reasons discussed below, the Court denies Plaintiffs' motions in part and grants them in part.

## I.   Background

     The following facts are undisputed unless otherwise noted.

### a.   Factual background

     The Port Authority is a bi-state agency that facilitates transportation at LaGuardia Airport

("LGA") and John F. Kennedy Airport ("JFK") and has its own police force, the Port Authority

Police Department (the "PAPD").  (Pls.' Stmt. of Material Facts Pursuant to Local R. 56.1 ("Pls.'

---

20-CV-1997, Docket Entry No. 3; VW Credit Compl., *VW Credit, Inc. v. The Port Auth. of N.Y. and N.J.*, No. 20-CV-1998, Docket Entry No. 3.)

   [2]  Santander and VW Credit filed identical joint motions for summary judgment on each of their dockets.  (*See* Santander's Mot. for Summ. J., *Santander Consumer USA, Inc. v. Port Auth. of N.Y. and N.J.*, No. 20-CV-1997, Docket Entry No. 24; VW Credit's Mot. for Summ. J., *VW Credit, Inc. v. The Port Auth. of N.Y. and N.J.*, No. 20-CV-1998, Docket Entry No. 23.)  The Court will refer to the briefing filed in *Santander Consumer USA, Inc. v. Port Auth. of N.Y. and N.J.*, No. 20-CV-1997.  (*See* Santander's Mot. for Summ. J., *Santander Consumer USA, Inc. v. Port Auth. of N.Y. and N.J.*, No. 20-CV-1997 ( "Pls.' Mot."); Santander Mem. of Law in Supp. of Pls.' Mot., *Santander Consumer USA, Inc. v. Port Auth. of N.Y. and N.J.*, No. 20-CV-1997, Docket Entry No. 24-1 ("Pls.' Mem.").); Decl. of Nicholas A. Duston in Supp. of Pls.' Mot. ("Duston Decl."), *Santander Consumer USA, Inc. v. Port Auth. of N.Y. and N.J.*, No. 20-CV-1997, Docket Entry No. 24-3.

   [3]  (*See* Def.'s Opp'n to Pls.' Mot. ("Def.'s Opp'n"), Docket Entry No. 25.)

56.1") ¶¶ 15–16, Docket Entry No. 24-2.)  JFK and LGA have multiple parking lots and garages that are operated by ABM Parking Services ("ABM").  (Decl. of James Kostaris dated Sept. 27, 2021 ("Kostaris Decl.") ¶ 5, annexed to Def.'s Opp'n as Ex. D, Docket Entry No. 25-5; Decl. of Frank Negron dated Sept. 29, 2021 ("Negron Decl.") ¶ 5, annexed to Def.'s Opp'n as Ex. E, Docket Entry No. 25-6.)  According to Defendant's policy, permission to park in the parking lots and garages is limited to thirty days, (Kostaris Decl. ¶¶ 5–6), and vehicles left in the parking garages and lots over thirty days are deemed abandoned, (*see* Def.'s Counter to Pls.' 56.1 ("Def.'s 56.1") ¶ 21, Docket Entry No. 25-10; Kostaris Decl. ¶ 6; Negron Decl. ¶ 6).  When a vehicle is abandoned, the PAPD takes possession of the vehicle and sends written notification to the registered owner and lienholder.[4]  (Pls.' 56.1 ¶ 19; Kostaris Decl. ¶ 12.)  Notice of the time limit for parking is posted in the lots and on tickets that a driver obtains when they enter the lots. (Kostaris Decl. ¶ 6; Negron Decl. ¶ 6.)  Abandoned vehicles remain in the PAPD's possession until the vehicle is claimed by the registered owner, lienholder or their designees.  (Pls.' 56.1 ¶ 19.)  Defendant will not release a vehicle until the fees for towing and storing the vehicle are paid in full.  (*Id.* at ¶ 20; General Order Vehicle Impound and Inventory ("Vehicle Impound Order") PA 320, annexed to Pls.' Mot. as Ex. 3, Docket Entry No. 24-6.)  Defendant's policy indicates that hearings are available under certain circumstances — such as when a vehicle is seized as arrest evidence — but does not provide information for hearings in other circumstances.  (Pls.' 56.1 ¶ 22; *see generally* Vehicle Impound Order PA 317–19.)

---

[4]  A vehicle may also be "deemed to be an abandoned vehicle if left unattended . . . for more than ninety-six hours on property of another if left without permission of the owner."  N.Y. Veh. & Traf. L. § 1224(1)(d); (Pls.' 56.1 ¶ 23).  Defendant notifies the owner and lienholder by regular certified mail of (1) the cost imposed for towing and storage; (2) instructions for recovering the vehicle; and (3) notice of impoundment.  (*See* General Order Vehicle Impound and Inventory ("Vehicle Impound Order") PA 317–19, annexed to Pls.' Mot. as Ex. 3, Docket Entry No. 24-6.)

### i.   Impoundment and notice

Each of the Vehicles was purchased through a retail installment contract and Plaintiffs financed the purchase of the Vehicles.  (Pls.' 56.1 ¶¶ 3, 5, 7, 13.)

### 1.   The 2014 Kia Sorento

On or around August 23, 2016, a non-party car dealership sold the 2014 Kia Sorento to a non-party customer; Santander financed the purchase of the vehicle and was listed as a lienholder of the vehicle.  (*Id*. at ¶¶ 4–5.)  On April 30, 2018, the PAPD requested the authorized tow operator at JFK to remove the 2014 Kia Sorento from the "Green Parking Lot" to the PAPD lot after it had remained in the Green Parking Lot for seventy-two days.  (Pls.' 56.1 ¶¶ 27–28; Kostaris Decl. ¶¶ 7, 9–10.)  On May 6, 2018, Santander received notice of the impoundment as required by New York Vehicle and Traffic Law section 1224 ("section 1224").  *See* N.Y. Veh. & Traf. L. § 1224 (3)(b); (Pls.' 56.1 ¶ 35; Def.'s 56.1 ¶ 35; Kia Sorrento Impound Notice Letter dated May 3, 2018 ("Sorrento Notice") at PA 6, annexed to Kostaris Decl. as Ex. 2, Docket Entry No. 25-5).

### 2.   The 2015 Nissan Altima

On or around May 26, 2016, a non-party car dealership sold the 2015 Nissan Altima to a non-party customer; Santander financed the purchase of the vehicle and was listed as a lienholder of the vehicle.  (Pls.' 56.1 ¶¶ 2–3.)  On June 11, 2018, the PAPD requested the authorized tow operator at LGA to remove the 2015 Nissan Altima from "Parking Lot 4" to the PAPD lot after it had remained in Parking Lot 4 for eighty-three days.  (*Id.* at ¶¶ 29–30; Negron Decl. ¶¶ 7, 10.)  On June 15, 2018, Santander received notice of the impoundment as required by section 1224. *See* N.Y. Veh. & Traf. L. § 1224 (3)(b); (Pls.' 56.1 ¶ 36; Def.'s 56.1 ¶ 36; Nissan Altima

Impound Notice Letter dated June 11, 2018 ("Altima Notice") at PA 19, annexed to Negron

Decl. as Ex. 1, Docket Entry No. 25-6.)

### 3.   The 2016 Audi A7

On or around July 4, 2019, a non-party car dealership sold the 2016 Audi A7 to a

non-party customer; VW Credit financed the purchase of the vehicle and was listed as a

lienholder of the vehicle.  (Pls.' 56.1 ¶¶ 12–13.)  On August 27, 2019, the PAPD requested the

authorized tow operator at LGA to remove the 2016 Audi from the "East Parking Garage" to the

PAPD lot after it remained in East Parking Garage for forty-five days.  (*Id.* at ¶¶ 31–32; Negron

Decl. ¶¶ 8, 11.)  On September 3, 2019, VW Credit received notice of the impoundment as

required by section 1224.  *See* N.Y. Veh. & Traf. L. § 1224 (3)(b); (Pls.' 56.1 ¶ 37; Def.'s 56.1 ¶

37; Audi A7 Impound Notice Letter dated Aug. 27, 2018 ("A7 Notice") at PA 3, annexed to

Negron Decl. as Ex. 2, Docket Entry No. 25-6).

### 4.   The 2019 Chevrolet Impala

On or around November 29, 2018, a non-party car dealership sold the 2019 Chevrolet

Impala to a non-party customer; Santander financed the purchase of the vehicle and was listed as

a lienholder of the vehicle.  (Pls.' 56.1 ¶¶ 6–8.)  On September 6, 2019, the PAPD requested the

authorized tow operator at JFK to remove the 2019 Chevrolet Impala from the "Yellow Parking

Lot" to the PAPD lot after it had remained in the Yellow Parking Lot for 133 days.  (Pls.' 56.1 ¶¶

33–34; Kostaris Decl. ¶¶ 8, 11.)  On September 10, 2019, Santander received notice of the

impoundment as required by section 1224.  *See* N.Y. Veh. & Traf. L. § 1224 (3)(b); (Pls.' 56.1 ¶

38; Def.'s 56.1 ¶ 38; Chevrolet Impala Notice Letter dated Sept. 6, 2019 ("Impala Notice") at PA

46, annexed to Kostaris Decl. as Ex. 2, Docket Entry No. 25-5).

All of the notices issued stated:

> The abandoned vehicle, described above, was removed by [Defendant] after being left unattended at [JFK or LGA]. Under [s]ection 1224 of the New York State Vehicle and Traffic Law, [Defendant] will acquire ownership of this vehicle on [a date ten days from date of notice] unless it is claimed by the owner or lienholder. The person claiming this vehicle is responsible for the cost of its removal and storage. If the vehicle is unclaimed, your lien will be terminated. You may claim this vehicle by appearing at [Defendant's] Police Auto Crime Unit.

(Pls.' 56.1 ¶ 39; Def.'s 56.1 ¶ 39.)

### ii. Release

Defendant refused to release possession of the Vehicles until Plaintiffs paid past-due parking fees, towing, and storage charges relating to each of the Vehicles. (Pls.' 56.1 ¶ 40.) On May 16, 2018, ten days after it received the Sorento Notice, Santander's agent paid $3,481.09 to release the Kia Sorento.[5]  (*Id.* at ¶¶ 44–47; Def.'s 56.1 ¶¶ 44, 46.) On June 20, 2018, Santander's agent paid $4,412.09 to release the Nissan Altima, five days after it received the Altima Notice.[6] (Pls.' 56.1 ¶¶ 41–43; Def.'s 56.1 ¶¶ 41, 43.) Santander has not regained possession of the Chevrolet Impala. (Pls.' 56.1 ¶ 48; Def.'s 56.1 ¶ 48.) Santander claims that as of September 25, 2019, Defendant asserted a $8,796.09 lien on the Chevrolet Impala. (Pls.' 56.1 ¶ 47.) Defendant claims it has not asserted a lien or refused to release the Chevrolet Impala. (Def.'s 56.1 ¶ 47.) VW Credit has not regained possession of the Audi A7. (Pls.' 56.1 ¶ 51; Def.'s 56.1 ¶ 51.) VW Credit claims that as of November 7, 2019, Defendant asserted a $7,436.09 lien on the vehicle. (Pls.' 56.1 ¶ 50.) Defendant claims it has not asserted a lien or refused to release the Audi A7.

---

[5]  Defendant contends that Santander paid $1,836.09 to Defendant for towing and storage fees in order to obtain the Kia Sorento and paid $1,645.00 to ABM for parking fees. (Def.'s 56.1 ¶¶ 46, 53; Kostaris Decl. ¶ 14.)

[6]  Defendant contends that Santander paid $1,136.09 to Defendant for towing and storage fees in order to obtain the Nissan Altima and paid $3,276.00 to ABM for parking fees. (Def.'s 56.1 ¶¶ 43, 52; Negron Decl. ¶ 15.)

(Def.'s 56.1 ¶ 50.)

   **b.   Procedural history**

   Plaintiffs each commenced related actions on May 4, 2020 against Defendant pursuant to

42 U.S.C. §§ 1983 and 1988, alleging deprivation of property without unreasonable seizure and

due process in violation of the Fourth and Fourteenth Amendments and the New York State

Constitution.  (*See* Santander Compl; VW Credit Compl.)  Plaintiffs move for summary

judgment arguing that (1) Defendant's policy of seizing vehicles to collect unpaid and

unadjudicated fees violates the Fourth Amendment because the seizures are unreasonable and not

accompanied by a warrant, (Pls.' Mem. 8–16); (2) Defendant's policy for impounding vehicles

without a hearing is unconstitutional and violates the Fourteenth Amendment, (*id*. at 16–24); and

(3) Defendant's conduct also violates the New York Constitution, (*id*. at 26).  Plaintiffs also seek

damages and a declaration that Defendant's "policy and custom of seizing cars which have been

left in [Defendant's] parking lot and/or garages longer than [thirty] days . . . without affording a

hearing . . .  violates the Fourth and Fourteenth Amendment protections against unreasonable

seizures and deprivations of property without due process of law."  (*Id*. at 27–32.)

   Defendant opposes the motions and argues that material disputes preclude the Court from

making a determination that impounding the Vehicles was unreasonable as a matter of law and

that a warrant was not required prior to impounding the Vehicles.  (Def.'s Opp'n 6–10.)

Defendant also argues that (1) Plaintiffs have not shown that Defendant's actions violated

Plaintiffs' due process rights, (*id*. at 10–16); (2) Plaintiffs fail to state a claim for municipal

liability under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), (*id*. at 16–18);

and (3) Plaintiffs fail to comply with state statutory jurisdictional requirements, (*id*. at 18–20).[7]

## II.  Discussion

### a.   Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Windward*

*Bora, LLC v. Wilmington Sav. Fund Soc'y*, 982 F.3d 139, 142 (2d Cir. 2020); *Wandering Dago,*

*Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).  The court must "constru[e] the evidence in the

light most favorable to the non-moving party" and "resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought."

*Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l*

*Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445

F.3d 532, 534 (2d Cir. 2006)).  The role of the court "is not to resolve disputed questions of fact

but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz*

*v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*,

---

[7]  Plaintiffs bring claims under Article 1, Sections 6 and 12 of the New York State
Constitution for unreasonable seizure and lack of due process that are identical to their Fourth
and Fourteenth claims.  (Santander Compl. ¶¶ 56–57; VW Credit Compl. ¶¶ 42–43.)  However,
Plaintiffs did not address their state constitutional claims in their briefing.  (*see generally* Pls.'
Mem.)  Nevertheless, Plaintiffs' New York State constitutional claims are adequately addressed
through their Fourth and Fourteenth Amendment claims.  *See Oneida Indian Nation of N.Y. v.*
*Madison County*, 665 F.3d 408, 427 n.13 (2d Cir. 2011) ("New York courts have interpreted the
due process guarantees of the New York Constitution and the United States Constitution to be
coextensive."); *Saheed v. City of New York*, No. 17-CV-1813, 2020 WL 1644006, at *17
(S.D.N.Y. Apr. 2, 2020) (dismissing claims under Article 1, Section 12 of the New York State
Constitution for the same reasons as the dismissal of Fourth Amendment claims because "[t]he
search and seizure language of the Fourth Amendment . . . and the language of Article 1, Section
12 of the New York State Constitution . . . is identical, and the two provisions generally confer
similar rights" (quoting *Mittelman v. County of Rockland*, No. 07-CV-6382, 2013 WL 1248623,
at *30 (S.D.N.Y. Mar. 26, 2013))).

609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

  **b. Fourth Amendment claim**

  Plaintiffs argue that Defendant's impoundment of vehicles it deems to be abandoned is unreasonable because the "seizure of [the v]ehicles which it determines to be abandoned are not accompanied by a warrant or valid exception to the [Fourth Amendment's] warrant requirement."  (Pls.' Mem. 12–13.)  In support, Plaintiffs claim that they have a constitutionally protectable interest as lienholders, (*id.* at 9–10), and "that there is no urgency or concern for the safety of the public or the [V]ehicles" to justify the warrantless seizure of the [V]ehicles.  (Pls.' Reply in Further Supp. of Pls.' Mot. ("Pls.' Reply") 7, Docket Entry No. 28; Pls.' Mem. 12–13.)  In addition, Plaintiffs argue that even if Defendant had a valid exception justifying the initial seizure, Defendant's continued seizure of the vehicle is unreasonable because Defendant's indefinite retention of the Vehicles — unless the owner pays past-due parking fees as well as towing and storage charges — is a *de facto* forfeiture.  (Pls.' Mem. 13–15.)  Plaintiffs also contend that a forfeiture action "would trigger a whole host of procedural protections" that Defendant has not provided.  (*Id.* at 14–15.)

  Defendant argues that the impoundment of the Vehicles was reasonable.  (Def.'s Opp'n 9.)  In support, Defendant asserts that removing vehicles that "(1) by definition . . . were

abandoned under state law" and (2) "freed up [airport parking] spaces so that they could be used by others coming [i]nto the airport" is consistent with its statutory obligation to ensure the efficient operation of airports by aiding patron travel and keeping traffic at the airport moving smoothly.  (*Id.* at 6–8.)  In addition, Defendant contends that Plaintiffs are not entitled to summary judgment because neither the Supreme Court nor the Second Circuit has addressed the issue of whether, and under what circumstances, the tow and removal of a vehicle deemed abandoned under section 1224 violates the Fourth Amendment.  (*Id.* at 9–10.)

### i.   Initial impoundment

The Fourth Amendment protects individuals "against unreasonable searches and seizures."  U.S. Const. amend. IV; *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021); *United States v. Bailey*, 743 F.3d 322, 331 (2d Cir. 2014).  "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." *United States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014) (citing *United States v. Jones*, 565 U.S. 400, 407 (2012)), *rev'd en banc*, 824 F.3d 199 (2d Cir. 2016); *see Soldal v. Cook County, Illinois*, 506 U.S. 56, 61–64 (1992) (explaining that a seizure occurs when one's property interests are violated).  "The rights and benefits of property ownership . . . include not only the right to actual possession of a thing, but also the right to exclude others from possessing it, . . . and the right to sell, alienate, waste, or even destroy it." *Almeida v. Holder*, 588 F.3d 778, 788 (2d Cir. 2009) (citing Hon. James L. Oakes, *"Property Rights" in Constitutional Analysis Today*, 56 Wash. L. Rev. 583, 589 (1981)).  "Warrantless . . . seizures are 'per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.'"  *Weaver*, 9 F.4th at 138 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

"The impoundment of a vehicle implicates rights guaranteed by the Fourth Amendment's protection against unreasonable searches and seizures." *Bey v. Dist. of Columbia*, No. 17-CV-620, 2018 WL 5777021, at \*5 (E.D.N.Y. Nov. 1, 2018) (quoting *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). It "is a seizure within the meaning of the Fourth Amendment." *Miranda*, 429 F.3d at 862; *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at \*7 (S.D.N.Y. Mar. 5, 2020) (quoting *Bey*, 2018 WL 5777021, at \*5); *see also United States v. Coccia*, 446 F.3d 233, 237–38 (1st Cir. 2006) (considering a challenge to the towing of a vehicle as an unreasonable seizure in violation of the Fourth Amendment). However, "[i]n the interests of public safety and as part of what the [Supreme] Court has called 'community caretaking functions,' automobiles are frequently taken into police custody." *South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)); *see United States v. Morris*, No. 20-CR-100, 2022 WL 1651408, at \*4 (W.D.N.Y. Apr. 12, 2022) ("It is well established that police have the authority, despite the absence of a warrant, to seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions — an authority that is beyond reasonable challenge." (quoting *United States v. Lyle*, 919 F.3d 716, 728 (2d Cir. 2019))), *report and recommendation adopted*, No. 20-CR-100, 2022 WL 1645261 (W.D.N.Y. May 24, 2022); *Vasquez*, 2020 WL 1082786, at \*7 (recognizing that "it is reasonable for police officers to impound the vehicle under . . . community care functions where, among other things, the vehicle would otherwise . . . threaten public safety" (quoting *United States v. Colon*, No. 10-CR-498, 2011 WL 569874, at \*14 (S.D.N.Y. Feb. 8, 2011))). "[W]hether a decision to impound is reasonable under the Fourth Amendment is based on all the facts and circumstances of a given case." *Lyle*, 919 F.3d at 731; *Hawthorne by Hawthorne v. County of Putnam*, 492 F. Supp. 3d 281, 297 (S.D.N.Y. 2020).

Under the totality of the circumstances, Defendant's seizures of Plaintiffs' vehicles were reasonable.  Defendant "has been empowered to promulgate regulations with respect to its operations."  *HVT, Inc. v. Port Auth. of N.Y. and N.J.*, No. 15-CV-5867, 2018 WL 3134414, at *6 (E.D.N.Y. Feb. 15, 2018) (quoting *Am. Honda Fin. Corp. v. One 2008 Honda Pilot*, 878 N.Y.S.2d 597, 600 (N.Y. Sup. Ct. 2009), *report and recommendation adopted*, No. 15-CV-586, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018)).  Making parking convenient and available to airport patrons is critical to the efficient operation of these garages and lots as that service aids travel and helps to keep traffic at the airport moving smoothly.  *See* N.Y. Comp. Codes R. & Regs. tit. 21, § 1262.16; (Def.'s Opp'n 7).  Defendant's policy deems vehicles left in the airports' parking garages and lots over thirty days to be abandoned and requires abandoned vehicles to be towed and impounded.  *See also* N.Y. Veh. & Traf. L. § 1224(1)(d) ("A motor vehicle shall be deemed to be an abandoned vehicle if left unattended . . . for more than ninety-six hours on property of another if left without permission of the owner."); *Lyle*, 919 F.3d at 731 (recognizing that "the existence of and an officer's adherence to a standardized criteria may be helpful in evaluating the reasonableness of an impoundment"); *Alloul v. City of New York*, No. 09-CV-7726, 2010 WL 5297215, at *5 (S.D.N.Y. Dec. 21, 2010) ("The [defendant]'s reasonable belief that the car was abandoned does not make it so.  Rather, the [defendant] must show that the vehicle was abandoned within the meaning of [section] 1224(1)."); (Pls.' 56.1 ¶ 19; Def.'s 56.1 ¶ 19; Vehicle Impound Order PA 317–20).  Notice of the parking time limit is posted in the lots and on the tickets that a driver obtains when they enter the lots.  (Kostaris Decl. ¶ 6; Negron Decl. ¶ 6.)  Plaintiffs' vehicles were left unattended at various airport parking garages and lots for between 45 and 133 days, (Pls.' 56.1 ¶¶ 27–34; Kostaris Decl. ¶¶ 7–9; Negron Decl.

¶¶ 7–9), and pursuant to Defendant's policy and regulations, Defendant towed and impounded Plaintiffs' vehicles, (Vehicle Impound Order PA 317–20).

Based on the undisputed facts, Defendant's impoundment of the Vehicles was reasonable because Defendant determined that the Vehicles were abandoned under both internal policy and local law, and Defendant removed the Vehicles from the lot to effectuate the efficient operation of airports. *See Opperman*, 428 U.S. at 368–69 (describing the authority of police "to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience," such as vehicles that "violate parking ordinances," as "beyond challenge"); *United States v. Sanders*, 796 F.3d 1241, 1249 (10th Cir. 2015) ("*Opperman* establishes that if a vehicle is obstructing or impeding traffic on public property, it can be impounded regardless of whether the impoundment is guided by standardized procedures." (citing *Opperman*, 428 U.S. at 369)); *see also King v. Creed*, No. 14-CV-165, 2017 WL 6389708, at *3 (N.D.N.Y. Dec. 13, 2017) (finding the defendant's impoundment was a permissible and reasonable exercise of the "community caretaker function" where the defendant decided to impound the plaintiff's vehicle pursuant to department policies governing suspended drivers' licenses and did not want to leave the plaintiff's vehicle unattended for an unknown period of time), *appeal dismissed*, 2018 WL 7021869 (2d Cir. May 24, 2018); *Shibeshi v. City of New York*, No. 11-CV-4449, 2011 WL 13176091, at *2 (S.D.N.Y. Sept. 21, 2011) ("The [c]ity's warrantless seizure of a person's vehicle from a public street due to that person's failure to pay parking ticket fines has been held not to violate the Fourth Amendment in that it is a reasonable seizure, does not implicate core privacy concerns requiring a warrant and, of itself, demonstrates probable cause." (citing *Rackley v. City of New York*, 186 F. Supp. 2d 466, 469–74 (S.D.N.Y. 2002))), *aff'd*, 475 F. App'x 807 (2d Cir. 2012). Thus, Plaintiffs have failed to prove that they are entitled to judgment as a matter

of law against Defendant's policy and practice of towing and impounding vehicles it deems abandoned.

### ii.   Continued impoundment

Moreover, Defendant's retention of the Vehicles until the owner pays relevant fees is not a violation of the Fourth Amendment.  In a summary order, the Second Circuit recently concluded that "'a seizure claim based [solely] on the unlawful retention' of property that was lawfully seized [i]s . . . 'too novel a theory to warrant Fourth Amendment protection.'" *Bennett v. Dutchess County, New York*, 832 F. App'x 58, 60 (2d Cir. 2020) (quoting *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist*, 363 F.3d 177, 187 (2d Cir. 2004)); *Gerte v. Borough of Naugatuck*, No. 19-CV-1511, 2021 WL 1165362, at *5 (D. Conn. Mar. 26, 2021) ("Where an initial seizure of property was reasonable, the 'failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure,' and improper retention of property may be addressed as a procedural due process claim." (quoting *Shaul*, 363 F.3d at 187)).  "Thus, '[t]o the extent the Constitution affords . . . any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process.'" *Santander Consumer USA, Inc. v. County of Suffolk*, No. 20-CV-2656, 2021 WL 4480574, at *12 (E.D.N.Y. Sept. 30, 2021) (quoting *Bennett*, 832 F. App'x at 60).

Accordingly, the Court denies Plaintiffs' motions as to their Fourth Amendment claims.[8]

---

[8]  In light of this ruling, the Court orders Plaintiffs to show cause as to why their Fourth Amendment claims should not be dismissed.  *See Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 49 (2d Cir. 2020) (per curiam) (recognizing that "courts have the discretion to grant summary judgment sua sponte," when the nonmoving party "has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried" (first quoting *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp*., 401 F.3d 28, 33 (2d Cir. 2005); and then quoting *Ramsey v. Coughlin*, 94 F.3d 71, 73–74 (2d Cir. 1996))); *see also* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.").

###### c.   Procedural due process claim

Plaintiffs argue that they are entitled to summary judgment with respect to their Fourteenth Amendment due process claim because Defendant's policy for impounding vehicles without a hearing is per se unconstitutional.  (Pls.' Reply 3.)  In support, Plaintiffs assert that (1) they have a protectable property interest because they are lienholders of the impounded vehicles; and (2) the procedures concerning the deprivation of their interest are constitutionally deficient because there is no opportunity for them to contest the abandonment of the vehicle or the resulting fees.  (Pls.' Mem. 16–23.)  Plaintiffs in effect argue that Defendant does not comply with due process because it only provides notice of the deprivation — the seizure of the vehicle — without any ability to contest it.  (Pls.' Reply 5.)  In addition, Plaintiffs argue that in order to comport with due process, Defendant should (1) hold a hearing before seizing allegedly abandoned vehicles because they do not pose an immediate threat to public safety that require a special need for prompt action, and (2) hold a hearing before the invocation of fees and charges to regain possession of the Vehicles.  (Pls.' Mem. 23–25.)

Defendant argues that Plaintiffs are not entitled to summary judgment as to their due process claim because they were not entitled to a hearing.  (Def.'s Opp'n 10–11.)  Defendant contends that it provided adequate due process because after the Vehicles were deemed abandoned, it provided Plaintiffs with timely and proper notice of the impoundment as required under section 1224 and applicable regulations and, in addition, the tow and storage fees are authorized and mandatory under the statute.  (*Id*. at 10–13.)  In addition, Defendant argues that given the nature of impoundments, Article 78 of the New York Civil Practice Law and Rules provides a constitutionally sufficient opportunity for them to challenge the validity of the impoundment and resulting fees.  (*Id*. at 13–15.)

### i. Plaintiffs have a property interest in the Vehicles that require due process protections

The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 196 (2d Cir. 2020) (Chin, J., concurring in part and dissenting in part) (quoting *Mathews*, 424 U.S. at 335). The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and "those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012)). "To plead a violation of procedural due process, a plaintiff must plausibly allege that [s]he was deprived of property without constitutionally adequate pre- or post-deprivation process." *Gentleman v. State Univ. of New York Stony Brook et. al*, No. 21-CV-1102, 2022 WL 1447381, at *2 (2d Cir. May 9, 2022) (quoting *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013)). "Thus, to plausibly state a claim, 'a plaintiff must first identify a property right, second show that the government has deprived h[er] of that right, and third show that the deprivation was effected without due process.'" *Id.* (quoting *J.S.*, 714 F.3d at 105) (internal quotations omitted); *see Reyes v. Fischer*, 934 F.3d 97, 106 (2d Cir. 2019) (recognizing that a court first asks, "whether there exists a liberty or property interest of which a person has been deprived," and if so, "whether the procedures followed by the State were constitutionally sufficient" (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011))).

As lienholders, Plaintiffs had a valid property interest in the Vehicles. *See Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 191 (2d Cir. 2007) ("[A] security interest is

indisputably a property interest protected by the Fourteenth Amendment."); *Alexandre v. Cortes,* 140 F.3d 406, 411 (2d Cir. 1998) ("[I]t is clear that the substantial sums that [the plaintiff] paid for the Porsche gave him a protected possessory interest in the car.").  Defendant does not contest the fact that it required Plaintiffs to pay fees and costs related to the impoundment before recovering the Vehicles.  (Vehicle Impound Order PA 320 ("No vehicle impounded pursuant to this policy shall be released unless the person claiming the vehicle . . . pay[s] . . . the fee for towing and storage of the vehicle . . . in full"); *see generally* Def.'s Opp'n.)  The denial of possession of the Vehicles from Plaintiffs until they pay fees — even as a temporary, nonfinal deprivation — is a deprivation pursuant to the Fourteenth Amendment.  *See HVT, Inc.*, 2018 WL 3134414, at *7  (quoting *Fuentes v. Shevin*, 407 U.S. 67, 85 (1972));[9] *see also Fuentes*, 407 U.S. at 85 ("When officials . . . seize one piece of property from a person's possession and then agree to return it if he surrenders another, they deprive him of property whether or not he has the funds, the knowledge, and the time needed to take advantage of the recovery provision."); *Ford Motor Credit Co.*, 503 F.3d at 192 ("When the state delays resolution of a claim, the claim holder's Fourteenth Amendment rights may be implicated, at least if the claim holder is not in equal part responsible for the delay. . . . Here, not only is the present value of the claim diminished by the

---

[9]  In *HVT, Inc. v. Port Authority*, the Court affirmed a report and recommendation from Magistrate Judge Vera M. Scanlon finding that "[Defendant's] official policy and practice of seizing and attaching a lien to vehicles [seized incident to an arrest] for towing deprived the [p]laintiff, [an automotive leasing company and lienholder], of its protected possessory interest in the vehicle by denying [the p]laintiff possession of the vehicle."  2018 WL 1409821, at *2.  Consistent with the facts of the case before the Court, Defendant's policy authorized the towing and impoundment of the Vehicles, refusal to release the vehicle until all towing and storage fees were paid, and the acquisition of the vehicle by Defendant if the plaintiff did not claim the vehicle.  *Id*. at *1–2.  The Court also affirmed Judge Scanlon's finding that "Defendant's internal impound protocols [were] constitutionally deficient because they failed to provide an opportunity for a hearing."  *Id*. (internal citations omitted).

indeterminacy of its eventual realization, but [the plaintiff's] property interest in the underlying asset suffers, as the vehicle depreciates over time."); *Krimstock v. Kelly*, 306 F.3d 40, 48 (2d Cir. 2002) (holding that "the [c]ity's continued retention of vehicles after their warrantless seizure by the police and prior to the ultimate resolution of the forfeiture action in court" was an "intermediate deprivation, lasting months or sometimes years without any prompt hearing before a neutral fact-finder" and "constitutionally infirm"); *British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 212 F.3d 138, 141 (2d Cir. 2000) (per curiam) ("[E]ven . . . temporary or partial impairments to property rights . . . are sufficient to merit due process protection." (quoting *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991))); *County of Nassau v. Canavan*, 1 N.Y.3d 134, 144 (2003) ("[A] hearing [is] required to ensure that . . . innocent owners are not deprived for months or years of cars ultimately proved not to be subject to forfeiture."). Thus the Court must address whether Defendant's tow and impoundment system afforded Plaintiffs proper procedural protections. *See Reyes*, 934 F.3d at 106.

### ii. An Article 78 proceeding does not satisfy due process

"In evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Id.* (citing *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880). Under these circumstances, the Second Circuit has "'held on numerous occasions that an Article 78 proceeding is a perfectly adequate post-deprivation remedy' [and]

ha[s] expressed concern only where there is a lengthy deprivation." *Lilakos v. New York City*, 808 F. App'x 4, 10 (2d Cir. 2020) (first quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881; and then citing *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017)); *see also Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (per curiam) ("This court has 'held on numerous occasions' that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, 'an Article 78 proceeding is a perfectly adequate post[-]deprivation remedy.'" (quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880–81)).

However, "[w]hen the deprivation occurs in the more structured environment of established [s]tate procedures, rather than random acts," the availability of post-deprivation procedures will not necessarily satisfy due process. *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 152 n.3 (2d Cir. 2010) (quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880); *see also Reid v. City of New York*, 212 F. App'x. 10, 11 (2d Cir. 2006) ("[A]n adequate post-deprivation remedy is a defense to a [s]ection 1983 due process claim only where the deprivation is random and unauthorized." (quoting *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990))); *Velez v. Levy*, 401 F.3d 75, 91–92 & n.14 (2d Cir. 2005) (stating that "post-deprivation remedies do not suffice where the government actor in question is a high ranking official with final authority over significant matters") (internal citations omitted); *Alexandre*, 140 F.3d at 411 (explaining that the availability of a meaningful post-deprivation remedy will not preclude a section 1983 claim based on a systemic policy). Thus, "[a]lthough an Article 78 proceeding is a 'perfectly adequate post[-]deprivation remedy in situations involving claims of deprivations of liberty or property interests where such deprivations result from random and arbitrary acts of state employees,' that is not so when . . . 'the due process violation

19

was caused by an established state procedure.'" *HVT, Inc.*, 2018 WL 3134414, at *13 (first

quoting *Federico v. Bd. of Educ. of Pub. Sch. of Tarrytowns*, 955 F. Supp. 194, 201 (S.D.N.Y.

1997); and then quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881); *see Butler*,

896 F.2d at 700 ("[T]he existence of independent state relief does not defeat a [s]ection 1983

claim where the deprivation complained of results from the operation of established state

procedures.").

Moreover, to determine whether available processes are adequate, courts look to

"[f]ederal constitutional standards rather than state law [to] define the requirements of procedural

due process." *Vincent v. Yelich*, 718 F.3d 157, 169 (2d Cir. 2013) (quoting *Russell v. Coughlin*,

910 F.2d 75, 78 n.1 (2d Cir. 1990)); *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) ("Federal

constitutional standards rather than state statutes define the requirements of procedural due

process." (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540–41 (1985))); *Jones v.

Nickens*, 961 F. Supp. 2d 475, 493 n.10 (E.D.N.Y. 2013) (same (citations omitted)). "'[T]he fact

that the [s]tate may have specified its own procedures that it may deem adequate for . . . official

action,' does not settle what protection the federal due process clause requires." *Russell*, 910

F.2d at 78 n.1 (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)); *Broecker v. N.Y.C. Dep't of

Educ.*, --- F. Supp. 3d ---, ---, 2022 WL 426113, at *5 (E.D.N.Y. Feb. 11, 2022) (recognizing that

determining what process is due is not defined by state law).

Because Defendant's conduct derives from established procedure, rather than a random

act, Defendant cannot summarily deprive Plaintiffs of their property interests without an

opportunity for a hearing.  Defendant tows and impounds vehicles that have been left in airport

parking lots and garages for over thirty days pursuant to internal and state policy.  (*See* Def.'s

56.1 ¶ 21; Kostaris Decl. ¶ 6; Negron Decl. ¶ 6.)  Plaintiffs' vehicles were parked in airport

parking garages and lots for between 45 and 133 days before Defendant towed and impounded the Vehicles.  (*See* Pls.' 56.1 ¶¶ 27–28; Kostaris Decl. ¶¶ 7–9; Negron Decl. ¶¶ 7–9.)  The same day the Vehicles were towed, Defendant sent Plaintiffs letters providing them with (1) notice of the impoundment pursuant to section 1224, (2) their duty to pay costs imposed for towing and storage of the vehicle, and (3) instructions for recovering the vehicle.  (Vehicle Impound Order PA 317–18; *see* Pls.' 56.1 ¶¶ 35–39; Kostaris Decl. ¶¶ 7–9; Negron Decl. ¶¶ 7–9; Sorento Notice; Altima Notice, A7 Notice; Impala Notice.)  The letters also declared that "[Defendant] will acquire ownership of this vehicle on [the date ten days after the letter] unless it is claimed by the owner or lienholder."  (Pls.' 56.1 ¶ 39; Sorento Notice; Altima Notice, A7 Notice; Impala Notice.)  Plaintiffs' access to a post-deprivation Article 78 proceeding does not provide a constitutionally sufficient opportunity for them to challenge the validity of the impoundment and resulting fees because, as discussed above, Plaintiffs' deprivations are not the result of random and arbitrary acts of municipal employees.

Nor does compliance with state abandonment laws absolve Defendant of its responsibility to provide Plaintiffs with adequate procedural process.  Defendant's impoundment of the Vehicles was based, in part, on New York Traffic Law's definition of an abandoned vehicle and authority to seize such vehicles.  *See* N.Y. Veh. & Traf. L. § 1224(1)(d).  However, even if state law authorizes Defendant to initiate a seizure, the United States Constitution, not state law, determines what process is due in light of the deprivation.  *Coles v. Erie County*, 629 F. App'x 41, 42 (2d Cir. 2015) (noting that "the question in a [section] 1983 suit claiming deprivation of a property interest without due process is not whether state procedural law was correctly followed or applied, but whether the process actually provided satisfies the requirements imposed by the Constitution"); *see also Cleveland Bd. of Educ.*, 470 U.S. at 541

("[O]nce it is determined that the Due Process Clause applies, . . . [t]he answer to th[e] question [of what process is due] is not to be found in the [state] statute."); *Victory*, 814 F.3d at 60 & n.9 (determining that the plaintiff's due process rights in a parole board's hearing must be determined under the federal Constitution even though every New York court to have addressed the issue has determined that the plaintiff is entitled to due process protections).

Therefore, Defendant's current policy of towing and impounding vehicles it deems abandoned, denying the release of the Vehicles until the owner pays towing and storage fees, and acquiring the vehicle if the owner does not claim it in ten days — without a hearing — is unconstitutional.  *HVT, Inc*., 2018 WL 3134414, at *9 ("Rather, the question is whether [the] [d]efendant can summarily deprive [the] [p]laintiff of its property without any opportunity for a hearing.  The law is quite clear that it cannot.").

### iii.   At minimum, Defendant must provide an opportunity for a hearing prior to Defendant's acquisition of the vehicle

Having found that Defendant's procedure does not provide Plaintiffs with its constitutionally guaranteed right to an opportunity to be heard, the Court must determine what process is due.

"The touchstone of due process . . . is 'the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'"  *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (second alteration in original) (quoting *Mathews*, 424 U.S. at 348–49); *see also Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))).  "In determining 'what process is due,' we recognize that 'due process is flexible and calls for such procedural protections as the particular situation demands.'"  *Francis v. Fiacco*, 942 F.3d 126,

142–43 (2d Cir. 2019) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) (recognizing that the process due in any given situation "will depend on appropriate accommodation of the competing interests involved" (quoting *Goss v. Lopez*, 419 U.S. 565, 579 (1975))); *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (quoting *Brody v. Village of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005))).  Ultimately, however, "[t]here is no universal approach to satisfying the requirements of meaningful notice and opportunity to be heard in a situation such as this."  *Krimstock*, 306 F.3d at 69 (citations omitted); *see Fuentes*, 407 U.S. at 96 (acknowledging that the "nature and form of [fair hearings] are legitimately open to many potential variations"); *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 791 (2d Cir. 1999) ("There is no rigid formula that determines the constitutional sufficiency of the process employed in connection with any given deprivation of a protected interest.").

Based on the facts presented, a hearing prior to impoundment is impractical and not required because Defendant would not be able to efficiently maintain access to airports if it was required to conduct a hearing before removing an allegedly abandoned vehicle from airport parking lots and garages.  *See Nnebe*, 644 F.3d at 158; *see Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the [s]tate satisfies its constitutional obligations by providing the latter." (citing *Parratt v. Taylor*, 451 U.S. 527, 541–42 (1981))); *Anderson v. Townsend*, No. 21-CV-3569, 2021 WL 5359681, at *5 (S.D.N.Y. Nov. 17, 2021) ("Pre[-]deprivation process is not constitutionally required in situations requiring 'quick action by the [s]tate.'" (quoting *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999)).

However, as described in *Krimstock*, *Ford Motor Credit Co.*, and *HVT, Inc.*, at minimum, Defendant must provide an opportunity for a hearing.  *See Ford Motor Credit Co.*, 503 F.3d at 189–90; *Krimstock*, 306 F.3d at 68–69; *HVT, Inc.*, 2018 WL 3134414, at *11 (finding that a proper remedy requires "that, at a minimum, . . . proper procedures include that the notice must be sent to . . . record lienholders of the seized vehicles" and "that notice must clearly provide an opportunity for a hearing; and that the government must be responsible for arranging and conducting the hearing" (first citing *Ford Motor Credit Co*., 394 F. Supp. 2d at 611; and then citing *Fuentes*, 407 U.S. at 80)); *see also Santander Consumer USA*, 2021 WL 4480574, at *9 (recognizing that "due process entitles lienholders to notice and an opportunity to be heard prior to forfeiture of a seized vehicle, [but] due process does not entitle lienholders to notice and an opportunity to be heard at a *Krimstock* retention hearing to challenge the [municipality's] likelihood of success at a forfeiture proceeding").

It is up to "the district court, in consultation with the parties, to fashion appropriate procedural relief consistent with this opinion." *Krimstock*, 306 F.3d at 69; *see also Fuentes*, 407 U.S. at 97 n.33 ("Leeway remains to develop a form of hearing that will minimize unnecessary cost and delay while preserving the fairness and effectiveness of the hearing[.]").  Therefore, the Court declines recommending a specific form of prompt post-deprivation hearing, but recommends that, at a minimum, Defendant's "notice must clearly provide an opportunity for a hearing[] and that the government must be responsible for arranging and conducting the hearing." *HVT, Inc.*, 2018 WL 3134414, at *11.

Accordingly, within sixty days of this Memorandum and Order, Defendant is required to submit proposed revised regulations or procedures to the Court for review.[10]

### d. Municipal liability

Defendant argues that it cannot be subject to municipal liability under *Monell* because Plaintiffs have failed to show a direct causal link between the Defendant's handling of the allegedly abandoned vehicles in the airport parking lots and Plaintiffs' purported damages. In support, Defendant asserts that there is no evidence that it misapplied N.Y. Veh. & Traf. L. § 1224 or misused it to seize the Vehicles. (Def.'s Opp'n. 16–18.)

In response, Plaintiffs argue that Defendant is subject to municipal liability because the Vehicles were impounded and Plaintiffs were subject to fees pursuant to Defendant's policies. (Pls.' Reply 9–10.)

To establish a municipal liability claim, a plaintiff is required to plead and prove three elements: "(1) an official policy or custom that (2) cause[s] [the plaintiff] to be subjected to (3) a denial of a constitutional right." *Torcivia v. Suffolk County, New York,* 17 F.4th 342, 355 (2d Cir. 2021) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (same); *see also Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020) ("To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." (quoting *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019))). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal

---

[10] Plaintiffs have expressly requested not to be involved in the process of rewriting Defendant's polices. (Pls.' Mem. 32.)

officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.  *See O'Kane v. Plainedge Union Free Sch. Dist.*, 827 F. App'x 141, 142–43 (2d Cir. 2020) (failure to "take appropriate action to prevent or sanction violations of constitutional rights" amounting to deliberate indifference (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012))); *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones*, 691 F.3d at 81 (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

A plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("Governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").  "[M]unicipalities have no immunity from damages for liability flowing from their constitutional violations."  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Owen v. City of Independence*, 445 U.S. 622, 657 (1980)).

As discussed above, Plaintiffs have shown a direct causal link between Defendant's policy of towing and impounding vehicles that they deem abandoned and the deprivation of Plaintiffs' property interest in their vehicles without a hearing.  The Court therefore denies

Defendant's motion as to Plaintiffs' municipal liability claims.

**e.   Relief**

Plaintiffs argue that they are entitled to damages in the amount of (1) $27,878.34,[11] plus

an additional $868.92 per month between the date of their brief and the date of recovery of the

Chevrolet Impala for Santander; and (2) $21,405.84,[12] plus an additional $891.91 per month

between the date of their brief and the date of recovery of the Audi A7 for VW Credit.  (Pls.'

Mem. 27.)  Plaintiffs also argue that they are entitled to declaratory relief and request that the

Court issue a declaration of the parties' respective rights in this case.  (*Id.* at 32.)  Plaintiffs "are

expressly not asking that the Court involve [Plaintiffs] in a process of re-writing [Defendant]'s

policies" but "ask the Court to enter judgment finding [Defendant] liable under [section 1983]

for [their] requested damages, and issuing an appropriate declaration."  (*Id.*)

Other than its *Monell* assertions, Defendant has not contested Plaintiffs' method for

calculating damages, the amount of award, or their request for declaratory relief.  (*See generally*

Def.'s Opp'n.)

The Court finds that Plaintiffs are obligated to pay the towing charges of $125.00 for the

Kia Sorento and Nissan Altima because the Court determined that the removal of the Vehicles

---

[11]  Santander's damages request of $27,878.34 includes $4,412.09 to recover the Nissan Altima, $3,481.09 to recover the Kia Sorento, and $19,985.16 for the Chevrolet Impala, which consists of monthly payments of $868.92 for a total of twenty-three months – the period of time through the filing of the briefs that Defendant has retained the Impala.  (Pls.' Mem. 27.)

[12]  VW Credit's damages request of $21,405.84 consists of monthly payments of $891.91 for a total of twenty-four months — the period of time through the filing of the briefs that Defendant has retained the A7.  (Pls.' Mem. 27.)

from the airport parking garages and lots was reasonable.[13]  *See Scofield v. City of Hillsborough,* 862 F.2d 759, 765 (9th Cir. 1988) ("The district court found that even if a post-towing hearing had been held, it would not have relieved [the plaintiff] from the obligation to pay the towing charges.").  (*See* Kia Sorento Towing Receipt, annexed to Kostaris Decl. as Ex. 1; Nissan Altima Towing Receipt at PA 17, 37, annexed to Negron Decl. as Ex. 1.)  The Court also finds that Plaintiffs are obligated to pay the parking fees that accrued while the Vehicles were parked in LGA and JFK lots and garages.  *See United States v. Wallace*, 476 F. Supp. 2d 1129, 1134–35 (D. Ariz. 2007) (finding that signs advising of fee for entry to federal recreation area provided proper notice).  To the extent Plaintiffs seek reimbursement of parking fees, they cannot recover such fees from Defendant.  (*See* Kostaris Decl. ¶¶ 5–6.)  However, the fees imposed for the storage of the Vehicles must be voided as Plaintiffs did not have an opportunity to contest the imposition of fees or the rate of accrual.  *See HVT, Inc.*, 2018 WL 3134414, at *15.

The Court defers ruling on Plaintiffs' motion for damages and directs Plaintiffs to resubmit a separate application for relief in light of the Court's Memorandum and Order.  The application should include information for the fees imposed for the storage of the Vehicles and Defendant will have an opportunity to respond to the motion.  The Court also directs the parties to confer to determine if they can agree as to compensatory damages.  With respect to declaratory relief, the Court, as described above, has determined that Defendant's current policy of towing and impounding vehicles it deems abandoned, denying the release of the Vehicles until the owner pays towing and storage fees, and acquiring the vehicle if the owner does not claim it in ten days — without a hearing — is unconstitutional.  In addition, the Court previously directed

---

[13]  The record only contains the towing receipts for the Kia Sorento and Nissan Altima. To the extent that Defendant can provided receipts for the towing costs associated with the Chevrolet Impala and Audi A7, it would not be responsible for those expenses.

Defendant to submit proposed revised regulations or procedures related to vehicle seizures incident to criminal arrests.[14]  *See HVT, Inc.*, 2021 WL 3828475, at *2 (E.D.N.Y. Aug. 26, 2021)*; HVT, Inc.*, 2019 WL 9828488, at *2 (E.D.N.Y. Aug. 23, 2019).  The Court now directs Defendant to submit revised regulations related to civil-incident car seizures to the Court for review.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiffs' summary judgment motions with respect to their Fourth Amendment claims and, in light of the Court's ruling, directs Plaintiffs to show cause as to why their Fourth Amendment claims should not be dismissed.  The Court grants Plaintiffs' summary judgment motions with respect to their procedural due process claims and directs Plaintiffs to move for compensatory damages and attorneys' fees within sixty days of the date of this Memorandum and Order.

---

[14]  The Court approved the *HVT, Inc. v. Port Auth. of N.Y. & N.J.* parties' proposed remedies in part, including that: (1) within five business days of a vehicle seizure, the PAPD must send notice of the seizure to titled owners, registered owners and lienholders via certified mail; (2) the notice should indicate the right to a hearing; (3) the notice should explain the hearing process; and (4) the titled owner, registered owner or lienholder is responsible for paying the towing fee when a car must be seized and towed for safekeeping after the arrest of the driver. 2021 WL 3828475, at *2 (E.D.N.Y. Aug. 26, 2021).  The parties are continuing negotiations on additional outstanding proposed remedies.  (Status Report, *HVT, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15-CV-5867, 2021 WL 3828475 (E.D.N.Y. Aug. 26, 2021), Docket Entry No. 85; Scheduling Order dated July 14, 2022.)

The Court further directs Defendant, within sixty days of this Memorandum and Order, to submit

proposed revised regulations or procedures for the Court's review.

Dated:  August 4, 2022
        Brooklyn, New York

SO ORDERED:

                                                                _____s/ MKB_____
                                                               MARGO K. BRODIE
                                                               United States District Judge